UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No.  2:17-CR-017 |
| | ) | |
| CASSANDRA DORENE DAPSON | ) | |

## MEMORANDUM AND ORDER

This criminal case is before the Court on the defendant's *pro se* motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).  [Doc. 243].  The United States has responded in opposition to the motion [doc. 247] and the defendant has not submitted a reply within the time allowed by this court's Local Rules.

The motion is now ripe for the Court's consideration.  For the reasons provided below, the motion will be denied.

## I.     BACKGROUND

In November 2017, the Honorable Pamela L. Reeves sentenced the defendant to a 100-month term of imprisonment for conspiring to distribute and possess with the intent to distribute methamphetamine.  The defendant is presently housed at FCI Tallahassee with a scheduled release date of May 31, 2024.  *See* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Nov. 18, 2020).  She now moves for immediate compassionate release due to the COVID-19 pandemic and numerous health concerns.  In the alternative, the defendant asks for a transfer to home confinement under the CARES Act.

## II.    CARES ACT

Section 12003 of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020), presently and temporarily provides for expanded prisoner home confinement.  However, the CARES Act places decision making authority solely within the discretion of the Attorney General and the Director of the Bureau of Prisons ("BOP").  Courts therefore do not have power to grant home confinement under the CARES Act, and the defendant's request for relief under that statute will be denied.

## III.   COMPASSIONATE RELEASE

Section 3582(c)(1)(A)(i) of Title 18, United States Code, allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons."  That statute, as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A).  Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant.  *See* 18 U.S.C. § 3582(c)(1)(A) (2017).  The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion

2

for compassionate release after first asking the BOP to file such a motion on his behalf. *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). Beyond this change, the statute still applies the same requirements to a defendant's motion for compassionate release as previously applied to motions by the BOP Director. *See, e.g.*, *United States v. Beck*, 425 F. Supp. 3d 573, 578-79 (M.D.N.C. 2019).

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes. *See United States v. McGraw*, No. 2:02-cr-00018-LJM-CMM, 2019 WL 2059488, at *3 (S.D. Ind. May 9, 2019). While that particular policy statement has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release, courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction. *Id*. at *2 (citations omitted).

As provided in § 1B1.13, consistent with the statutory directive in § 3582(c)(1)(A)(i), the compassionate release analysis requires several findings. First, the Court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). If such reasons are shown, the Court must then determine whether a movant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). If the Court so finds, the Court must then consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

3

## A. Exhaustion

The defendant has previously submitted a request for compassionate release to the BOP, and more than 30 days have passed since that request was received by her warden. [Doc. 243, ex. 1]. The Court thus has authority under § 3582(c)(1)(A) to address the instant motion. *See Alam*, 960 F.3d at 832.

## B. Merits

### 1. Extraordinary and Compelling Reasons

Regarding a movant's threshold burden of demonstrating the existence of extraordinary and compelling reasons warranting compassionate release, the Application Notes to guideline 1B1.13 provide in material part:

> 1. Extraordinary and Compelling Reasons.— ... [E]xtraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant.—
>
> (i)      The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii)      The defendant is—
>
> > (I)      suffering from a serious physical or medical condition,
> >
> > (II)      suffering from a serious functional or cognitive impairment, or
> >
> > (III)      experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

4

U.S.S.G. § 1B1.13 cmt. n.1(A).

The Court construes the defendant's motion as relying on subsection (A)(ii)(I), requiring a serious physical or medical condition which substantially diminishes the movant's ability to provide self-care within the prison environment and from which the movant is not expected to recover. As extraordinary and compelling reasons, the defendant cites the COVID-19 pandemic along with "hypertension, HEP-C virus damaging the immune system failure to Epclusa [a hepatitis C medication], white blood count low!, red blood count low, thrombocytopenia [a bleeding disorder], hypertropia [an eye movement disorder], otitis externa [ear infection], [illegible] low platelets, leucopenia [low white blood cell count], hematocrit low [a sign of iron deficiency], [illegible] low, ABL low, TP low, CA low, CO2 low." [Doc. 243, p. 2]. The defendant also claims that she "has been awaiting outside treatment for the cancer in her legs[.]" [*Id.*, p. 3].

The defendant has submitted BOP medical records. [Doc. 243, ex. 1]. May 2020 imaging indicated a suspected benign bone tumor in the lower left leg. Her hepatitis C is described as both "successfully treated with Epclusa" and as "failure to Epclusa." A 2020 oncology evaluation listed diagnoses of thrombocytopenia and leucopenia and mentioned a history of cirrhosis of the liver.

The BOP's SENTRY Report shows that the defendant is categorized as Care Level 2. "Care Level 2 inmates are stable outpatients who require clinician evaluations monthly to every 6 months. Their medical . . . conditions can be managed through routine, regularly scheduled appointments with clinicians for monitoring. Enhanced medical resources, such as consultation or evaluation by medical specialists, may be required from time to time." *See*

5

http://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf (last visited Nov. 18, 2020).

*Solely for purposes of the instant motion*, the Court will presume that the defendant's documented medical conditions constitute "extraordinary and compelling reasons" for compassionate release. The Court's analysis will proceed to the remaining steps of the compassionate release inquiry.

### 2. Danger to Any Other Person or to the Community

Guideline 1B1.13 provides that compassionate release is only appropriate where "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" U.S.S.G. § 1B1.13(2). Because the defendant has not shown that she would not be a danger if released, her motion will be denied.

Section 3142(g) outlines the factors the Court must consider in determining whether a defendant should be detained pending trial. Specifically, § 3142(g) provides:

> (g) Factors to be considered.—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
>
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

The Court has considered the above-listed factors and has familiarized itself with the Presentence Investigation Report ("PSR") in this case. [Doc. 96]. The Court has also considered the defendant's SENTRY Report.

The defendant's participation in the instant methamphetamine conspiracy was substantial. She admittedly distributed an ounce of methamphetamine weekly for a period of approximately eight months until her arrest. [Doc. 96, ¶ 14]. When arrested, she and an associate were in possession of 6.65 ounces of methamphetamine. [*Id.*, ¶¶ 12-13, 17]. The defendant was able to commit her crime notwithstanding alleged lumbar fractures, alleged back pain, alleged need for back surgery, alleged migraines secondary to an alleged bullet in her head, alleged high blood pressure, and untreated hepatitis C. [*Id.*, ¶ 53].

The defendant's criminal history includes other controlled substance convictions, an assault on her mother, and contempt of court stemming from an apparent violation of an order of protection. [*Id.*, ¶¶ 35-38, 40-42]. There have been multiple probation violations. [*Id.*, ¶¶ 36-38, 41]. Additionally, there is a lengthy history of polysubstance

7

abuse.  [*Id.*, ¶ 56].

According to her motion, the defendant "has remained clear conduct while in prison."  [Doc. 243, p. 3].  That statement is false.  Although the BOP scores her as a low security classification with a low risk of recidivism, the defendant has incurred three disciplinary sanctions during her current incarceration—for disruption of phone monitoring, possession of an unauthorized and unprescribed item, *and assault*.

The Court finds that the defendant remains a danger to the safety of another person or the community were she to be released at this time.  Purported serious health conditions did not keep her from extensively participating in the instant conspiracy or committing prior crimes.  Ongoing misconduct in the BOP signals an ongoing danger to the public.  The defendant's motion will accordingly be denied.

### 3.  Section 3553(a) Factors

The facts underlying a review of the 18 U.S.C. 3553(a) factors in this case are essentially the same as those considered in the preceding section of this memorandum.  The requested sentence reduction would not reflect the seriousness of the offense of conviction, would not promote respect for the law or afford adequate deterrence, and would not adequately protect the public from future crimes.  *See* 18 U.S.C. § 3553(a)(2).  For these additional reasons, the defendant's compassionate release request will be denied.

8

## IV.  CONCLUSION

As provided herein, the defendant's motion for compassionate release [doc. 243] is

**DENIED**.

        **IT IS SO ORDERED.**

ENTER:

<u>           s/ Leon Jordan     </u>
United States District Judge

9

Case 2:17-cr-00017-RLJ-MCLC   Document 248   Filed 11/20/20   Page 9 of 9   PageID #: 956